IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DAIRAN CALDERON-BATISTA,<br><br>Petitioner,<br><br>vs.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, KRISTI NOEM, Secretary, U.S. Department of Homeland Security; PAMELA BONDI, U.S. Attorney General; FIELD OFFICE DIRECTOR, Immigration and Customs Enforcement, Enforcement and Removal Operations, Fort Snelling, MN; FIELD OFFICE DIRECTOR, Immigration and Customs Enforcement, Enforcement and Removal Operations, Omaha, NE; and WARDEN, McCook Detention Center,<br><br>Respondents. | **7:26CV5002**<br><br><br>**MEMORANDUM AND ORDER ON PETITION FOR WRIT OF HABEAS CORPUS** |

In this action for habeas corpus relief pursuant to 28 U.S.C. § 2241, Petitioner Dairan Calderon-Batista, an alien who is a national of Cuba, challenges his detention by Immigration and Customs Enforcement (ICE) at the McCook Detention Center in McCook, Nebraska. Filing 1 at 1 (¶ 1), 2 (¶ 6). He alleges that his indefinite detention violates the Due Process Clause of the Fifth Amendment to the United States Constitution and the Immigration and Nationality Act (INA). Filing 1 at 2 (¶ 6).

The Court entered an Order to Show Cause requiring Respondents to make a return certifying the true cause of Calderon-Batista's detention and why his Petition should not be granted, and the Court also gave Calderon-Batista leave to file a reply. Filing 5. The Court set a

hearing on the matter on February 20, 2026. Filing 9. After that hearing, the Court now enters this ruling on Calderon-Batista's Petition.

The issues in this habeas proceeding are considerably different from those the undersigned has recently heard involving disputes over whether undocumented aliens were properly detained pursuant to either 8 U.S.C. § 1225 or 8 U.S.C. § 1226 after they were discovered in the United States. Instead, Petitioner Calderon-Batista asserts claims of detention in violation of 8 U.S.C. § 1231(a)(6) and in violation of procedural and substantive due process guaranteed by the Fifth Amendment to the United States Constitution while awaiting removal after a determination of removability following his convictions of criminal offenses.

In this case, the immigration court issued an order of removal for Calderon-Batista in 2019 after he was convicted of committing several crimes. Given the United States' stressed relationship with the Cuban government, there was no significant likelihood of removal of Calderon-Batista to Cuba in 2019. Filing 1 at 6 (¶ 25); Filing 12 at 4 (¶ 18). Thus, the immigration court temporarily released Calderon-Batista under terms of federal supervised release until such time as he could be deported. On June 27, 2025, after Calderon-Batista committed yet another criminal offense in the United States, he was re-detained by ICE seeking to enforce his 2019 removal order. Filing 1 at 7 (¶ 27). After Calderon-Batista's June 2025 arrest, the Mexican government communicated to ICE that it would accept Calderon-Batista if he was deported to that country.[1] Calderon-Batista refused to comply with ICE efforts to deport him to Mexico. ICE informed Calderon-Batista in November that he will not be released from custody pending removal given his failure to comply with ICE directives. Filing 1 at 7 (¶ 28).

---

[1] As discussed at the hearing, although the Cuban government may not cooperate with the United States government on deportations such as this one, the Cuban government may be more inclined to cooperate with other countries, such as Mexico. The Court concludes this may be a factor in Mexico's willingness to accept Calderon-Batista.

The issue on which Calderon-Batista's Petition focuses is whether he is improperly detained even though he claims that there is no significant chance of his removal to Cuba. Filing 1. The Federal Respondents' position is that Calderon-Batista is and will remain in custody not just because attempts to remove him to Cuba have been unsuccessful but because he is now in "failure-to-comply" status after refusing to get on a bus at outtake in El Paso following notice of removal to Mexico as a suitable third country that is willing to accept him. Filing 12 at 4. The State Respondent Warden took no position on the substantive issues raised in the Petition or on whether a writ should or should not be granted because the State Respondent understood that she was a party only because she is the physical custodian of Petitioner. Filing 7 at 1–2. For the reasons stated below, Petitioner Calderon-Batista's Petition is denied.

## I.  INTRODUCTION

### A.  Summary of the Legal Context

Some legal context would be helpful to understanding the facts, proceedings, and arguments in this case. Section 2241 of Title 28 of the United States Code extends the writ of habeas corpus *inter alia* to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Supreme Court has recognized that § 2241(c)(3) confers on the District Court jurisdiction to hear habeas corpus challenges to the legality of the detention of aliens, such as Petitioner Calderon-Batista. *Rasul v. Bush*, 542 U.S. 466, 483–84 (2004) ("[Alien] Petitioners contend that they are being held in federal custody in violation of the laws of the United States. . . . Section 2241, by its terms, requires nothing more."), *judgment entered*, No. 04A41, 2004 WL 7372970 (U.S. July 16, 2004); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) ("We note at the outset that the primary federal habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear these cases." (citing 28 U.S.C. § 2241(c)(3))). The applicable procedures for disposition of a habeas corpus petition under 28 U.S.C. § 2241 are

3

set out in 28 U.S.C. § 2243, which among other things requires a court to "award the writ or issue an order directing the respondent to show cause why the writ should not be granted." 28 U.S.C. § 2243.

The statute relevant to Calderon-Batista's detention is 8 U.S.C. § 1231, which "governs the detention, release, and removal of individuals 'ordered removed.'" *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022) (citing 8 U.S.C. § 1231(a)). Section 1231(a)(1) specifies the removal period, when the period begins, and under what circumstances the removal period may be suspended, as follows:

(a) Detention, release, and removal of aliens ordered removed

    (1) Removal period

        (A) In general

        Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the "removal period").

        (B) Beginning of period

        The removal period begins on the latest of the following:

            (i) The date the order of removal becomes administratively final.

            (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

            (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

        (C) Suspension of period

        The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or

conspires or acts to prevent the alien's removal subject to an order of removal.

8 U.S.C. § 1231(a)(1)(A)–(C). Thus, as the Supreme Court has explained, "After the entry of a final order of removal against a noncitizen, the Government generally must secure the noncitizen's removal during a 90-day 'removal period.'" *Johnson*, 596 U.S. at 578 (citing 8 U.S.C. § 1231(a)(1)(A)); *Mumad v. Garland*, 11 F.4th 834, 837 (8th Cir. 2021) ("Under the Immigration and Nationality Act, Congress directs the Attorney General to remove an alien from the country within ninety days of a removal order." (citing 8 U.S.C. § 1231(a)(1)(A)).

The statute also provides "that the Government 'shall' detain noncitizens during the statutory removal period." *Johnson*, 596 U.S. at 578 (quoting 8 U.S.C. § 1231(a)(2)). Specifically, it states in the part relevant here,

> (2) Detention
>
>> (A) In general
>>
>> During the removal period, the Attorney General shall detain the alien. Under no circumstance during the removal period shall the Attorney General release an alien who has been found inadmissible under section 1182(a)(2) or 1182(a)(3)(B) of this title or deportable under section 1227(a)(2) or 1227(a)(4)(B) of this title.

8 U.S.C. § 1231(a)(2).

Section 1231(a) also provides for supervision after the 90-day removal period expires, as follows:

> (3) Supervision after 90-day period
>
> If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General. The regulations shall include provisions requiring the alien—
>
>> (A) to appear before an immigration officer periodically for identification;

(B) to submit, if necessary, to a medical and psychiatric examination at the expense of the United States Government;

(C) to give information under oath about the alien's nationality, circumstances, habits, associations, and activities, and other information the Attorney General considers appropriate; and

(D) to obey reasonable written restrictions on the alien's conduct or activities that the Attorney General prescribes for the alien.

8 U.S.C. § 1231(a)(3).[2]

Section 1231(a)(6)—on which Calderon-Batista relies—limits detention of aliens ordered removed beyond the removal period as follows:

(6) Inadmissible or criminal aliens

An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

---

[2] Revocation of supervised release is permissible under 8 C.F.R. § 241.13(i), which states:

(i) Revocation of release—

(1) Violation of conditions of release. Any alien who has been released under an order of supervision under this section who violates any of the conditions of release may be returned to custody and is subject to the penalties described in section 243(b) of the Act. In suitable cases, the HQPDU shall refer the case to the appropriate U.S. Attorney for criminal prosecution. The alien may be continued in detention for an additional six months in order to effect the alien's removal, if possible, and to effect the conditions under which the alien had been released.

(2) Revocation for removal. The Service may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future. Thereafter, if the alien is not released from custody following the informal interview provided for in paragraph (h)(3) of this section, the provisions of § 241.4 shall govern the alien's continued detention pending removal.

(3) Revocation procedures. Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

8 C.F.R. § 241.13(j).

6

8 U.S.C. § 1231(a)(6). Thus, as the Supreme Court explained,

> After the removal period expires, the Government "may" detain only four categories of people: (1) those who are "inadmissible" on certain specified grounds; (2) those who are "removable" on certain specified grounds; (3) those it determines "to be a risk to the community"; and (4) those it determines to be "unlikely to comply with the order of removal." § 1231(a)(6). Individuals released after the removal period remain subject to terms of supervision. *Ibid*.

*Johnson*, 596 U.S. at 578–79.

An applicable regulation, 8 C.F.R. § 241.4, provides for the detention of aliens beyond the removal period in essentially the same terms as § 1231(a)(1)(C) provides for suspension of the removal period. The part of the regulation pertinent here states,

> Release will be denied and the alien may remain in detention if the alien fails or refuses to make timely application in good faith for travel documents necessary to the alien's departure or conspires or acts to prevent the alien's removal. The detention provisions of section 241(a)(2) of the Act [8 U.S.C. § 1231(a)(2)] will continue to apply, including provisions that mandate detention of certain criminal and terrorist aliens.

8 C.F.R. § 241.4(g)(5)(i).[3] Some courts have taken the position that "[a]n alien's failure to cooperate [also] diminishes any constitutional claim he might have in this regard." *See Thok v. Berg*, No. 8:20CV478, 2021 WL 1877646, at *2 (D. Neb. Apr. 1, 2021) (citing *Pelich v. I.N.S.*, 329 F.3d 1057, 1061 (9th Cir. 2003); *Gael A. O. v. DHS/ICE Office of Chief Counsel*, No. 18-CV-

---

[3] 8 C.F.R. § 241.4(g)(5) provides further,

> (ii) The Service shall serve the alien with a Notice of Failure to Comply, which shall advise the alien of the following: the provisions of sections 241(a)(1)(C) (extension of removal period) and 243(a) of the Act (criminal penalties related to removal); the circumstances demonstrating his or her failure to comply with the requirements of section 241(a)(1)(C) of the Act; and an explanation of the necessary steps that the alien must take in order to comply with the statutory requirements.

> (iii) The Service shall advise the alien that the Notice of Failure to Comply shall have the effect of extending the removal period as provided by law, if the removal period has not yet expired, and that the Service is not obligated to complete its scheduled custody reviews under this section until the alien has demonstrated compliance with the statutory obligations.

> (iv) The fact that the Service does not provide a Notice of Failure to Comply, within the 90–day removal period, to an alien who has failed to comply with the requirements of section 241(a)(1)(C) of the Act, shall not have the effect of excusing the alien's conduct.

8 C.F.R. § 241.4(g)(5) (ii)–(iv).

3269 (WMW/TNL), 2019 WL 3325839 at * 4 (D. Minn. May 13, 2019); and *In Akinsehinwa v. Donate*, No. 1:CV-08-00395, 2008 WL 2951072, *4 (M.D. Pa. 2008)).

Section 1231(b) identifies countries to which aliens may be removed. 8 U.S.C. § 1231(b). The part of the statute relevant here is § 1231(b)(2), which applies to "[o]ther aliens"—that is, aliens other than the ones defined in § 1231(b)(1) who are "[a]liens arriving at the United States." 8 U.S.C. § 1231(b)(1). In the part pertinent here, § 1231(b)(2) requires a country willing to accept the alien from a list of alternatives in order to effect removal:

(2) Other aliens

Subject to paragraph (3)--

(A) Selection of country by alien

Except as otherwise provided in this paragraph--

(i) any alien not described in paragraph (1) who has been ordered removed may designate one country to which the alien wants to be removed, and

(ii) the Attorney General shall remove the alien to the country the alien so designates.

(B) Limitation on designation

An alien may designate under subparagraph (A)(i) a foreign territory contiguous to the United States, an adjacent island, or an island adjacent to a foreign territory contiguous to the United States as the place to which the alien is to be removed only if the alien is a native, citizen, subject, or national of, or has resided in, that designated territory or island.

(C) Disregarding designation

The Attorney General may disregard a designation under subparagraph (A)(i) if--

(i) the alien fails to designate a country promptly;

(ii) the government of the country does not inform the Attorney General finally, within 30 days after the date the Attorney General first inquires, whether the government will accept the alien into the country;

(iii) the government of the country is not willing to accept the alien into the country; or

(iv) the Attorney General decides that removing the alien to the country is prejudicial to the United States.

(D) Alternative country

If an alien is not removed to a country designated under subparagraph (A)(i), the Attorney General shall remove the alien to a country of which the alien is a subject, national, or citizen unless the government of the country--

(i) does not inform the Attorney General or the alien finally, within 30 days after the date the Attorney General first inquires or within another period of time the Attorney General decides is reasonable, whether the government will accept the alien into the country; or

(ii) is not willing to accept the alien into the country.

(E) Additional removal countries

If an alien is not removed to a country under the previous subparagraphs of this paragraph, the Attorney General shall remove the alien to any of the following countries:

(i) The country from which the alien was admitted to the United States.

(ii) The country in which is located the foreign port from which the alien left for the United States or for a foreign territory contiguous to the United States.

(iii) A country in which the alien resided before the alien entered the country from which the alien entered the United States.

(iv) The country in which the alien was born.

(v) The country that had sovereignty over the alien's birthplace when the alien was born.

(vi) The country in which the alien's birthplace is located when the alien is ordered removed.

(vii) If impracticable, inadvisable, or impossible to remove the alien to each country described in a previous clause of this subparagraph, another country whose government will accept the alien into that country.

9

8 U.S.C. § 1231(b)(2)(A)–(E). To put it more briefly, this provision "provides numerous options [for the country to which an alien may be removed]: a country designated by the alien; the alien's country of citizenship; the alien's previous country of residence; the alien's country of birth; the country from which the alien departed for the United States; and finally, any country willing to accept the alien." *Johnson v. Guzman Chavez*, 594 U.S. 523, 536 (2021) (citing Brief for Petitioners 3, in turn citing 8 U. S. C. § 1231(b)(2)).

### B. Factual Background

With this legal context in mind, the Court turns to a summary of the factual background to Calderon-Batista's Petition. Calderon-Batista alleges that he arrived in the United States in 2001 and later obtained lawful permanent resident status. Filing 1 at 6 (¶¶ 22–23). However, he was ordered removed by the immigration court on May 27, 2019. Filing 1 at 1 (¶ 2), 6 (¶ 24). Federal Respondents' declarant, Deportation Officer Lanette Hernandez, Filing 12 at 1 (unnumbered para. & ¶ 1), explains that DHS records show that Calderon-Batista was ordered removed after serving a sentence for two counts of conspiracy to commit an offense against the United States to sell or receive stolen goods and one count of transportation of stolen goods at a federal correctional institute. Filing 12 at 4 (¶ 15). Calderon-Batista alleges, "After several months in detention, and after [ICE] having determined Petitioner's removal was no longer foreseeable, ICE released Petitioner sometime on or about October 30, 2019, on an Order of Supervision Program ('OSUP')." Filing 1 at 2 (¶ 3), 6 (¶ 25).

Calderon-Batista contends that after years of faithfully complying with and reporting under the OSUP program, he was re-detained by ICE on June 27, 2025, and has remained in ICE custody since. Filing 1 at 2 (¶¶ 4–5), 6–7 (¶¶ 26–27). The Federal Respondents' declarant states that Calderon-Batista was rearrested by ICE after being encountered in the Madison County Jail in Nebraska on theft charges. Filing 12 at 4 (¶ 19).

10

Calderon-Batista alleges that on November 21, 2025, ICE informed him that he "will not be released from custody." Filing 1 at 7 (¶ 28) (citing Filing 1-1 at 7). The document he cites in support of this allegation is a Decision to Continue Detention, which states in most pertinent part,

> As explained below, after such review [of Calderon-Batista's custody status], ICE has determined to maintain your custody because:
>
> - You have not demonstrated that, if released, you will not pose a risk to public safety.
>
>   AND
>
> - You have not demonstrated that, if released, you will not pose a risk of flight.
>
>   AND
>
> - ICE is in receipt of or expects to receive the necessary travel documents to effectuate your removal, and removal is practicable, likely to occur in the reasonably foreseeable future, and in the public interest.
>
> ICE has made such determination based upon your outstanding removal order and your criminal history.

Filing 1-1 at 7.

On December 27, 2025, Calderon-Batista was served with a Notice of Failure to Comply Pursuant to 8 C.F.R. § 241.4(g). Filing 1-1 at 5–6; *see also* Filing 1 at 7 (¶ 30) ("On December 27, 2025, ICE served Petitioner with further documents regarding his detention."). That Notice states the following in pertinent part:

> On June 27, 2025; you were advised, via form I-229(a) and Instruction Sheet to Detainee, of specific requirements to complete and were given 30 days to comply with your obligation to assist in obtaining a travel document. The burden to obtain a travel document for your removal does not solely rest with ICE. Pursuant to Section 241 (a)(1)(C) of the Immigration and Nationality Act (INA), you are required.to make timely and good faith efforts to obtain travel or other documents necessary for your removal from the United States. If you fail to make these efforts, Section 241(a)(l)(C) allows for the extension of the removal period. You have failed *to assist ICE in applying for a travel document. You have been ordered removed from the United States by an Immigration Judge to Cuba or an alternative country. When Deportation Officers asked if you would comply with a removal to Mexico,*

11

*you refused.* You have failed to comply with your obligation and are acting to prevent your removal from the United States. The removal period is therefore extended in your case.

As you are still within the removal period, you are to remain in ICE custody until you demonstrate that you are making reasonable efforts to comply with the order of removal, and that you are cooperating with ICE's efforts to remove you.

Filing 1-1 at 5 (emphasis in the original); Filing 1 at 7 (¶ 31). The Proof of Service of the Notice of Failure to Comply shows service on Calderon-Batista by certified mail. Filing 1-1 at 6.

Calderon-Batista alleges that based on these last two custody reviews, "it appears Cuba is not cooperating with ICE on Petitioner's travel documents." Filing 1 at 7 (¶ 32). He alleges that on January 29, 2025, his counsel attempted to contact Cuba and request travel documents, "but Cuba has ignored the requests." Filing 1 at 7 (¶ 33). Calderon-Batista alleges that he has no information on how much longer ICE plans to detain him and no information from Federal Respondents about the foreseeability of his removal apart from the "amorphous" statement in the November 21, 2025, Notice that "ICE is in receipt of or expects to receive the necessary travel documents to effectuate [his] removal." Filing 1 at 8 (¶¶ 34–35).

Calderon-Batista concludes his factual allegations with the following statements:

36.    Nothing within Petitioner's record leads to the conclusion that he is violent, dangerous, or a flight-risk.

37.    Petitioner has cooperated with Respondents in their effort to remove Petitioner by reaching out to Cuba for Travel Documents, but Cuba has not replied to either Petitioner's efforts, or Respondents['']. *See* [Filing 1-1 at 3].

38.    Petitioner remains in detention. Without relief from this Court, he faces the prospect of months, or even years, in immigration custody.

Filing 1 at 8 (¶¶ 36–38).

Federal Respondents contend that there is more to the story. Federal Respondents' declarant states that on October 31, 2025, the Government of Cuba denied acceptance of Calderon-Batista. Filing 12 at 4 (¶ 20). However, almost two months earlier, on September 2, 2025, ICE

served Calderon-Batista with a notice of third country removal to Mexico. Filing 12 at 4 (¶ 21). The Notice of Removal states, "This letter is to inform you that U.S. Immigration and Customs Enforcement (ICE) intends to remove you to Mexico." Filing 12-7. The Certificate of Service portion of the Notice shows that it was read to Calderon-Batista on September 2, 2025, in both Spanish and English, that Calderon-Batista was given a copy, and that Calderon-Batista refused to sign the Certificate of Service. Filing 12-7.

The Federal Respondents' declarant states,

On September 22, 2025, El Paso, Texas ERO attempted to remove Petitioner to Mexico. Petitioner refused to get on the bus at outtake in El Paso, Camp East Montana. At this point the Petitioner is considered to be in failure to comply status.

Filing 12 at 4 (¶ 22). The rest of the declarant's statements about Calderon-Batista's status are the following:

23.    On October 01, 2025, [a] Stay of Deportation [was] granted by [Immigration Judge (IJ)].

24.    On October 15, 2025, Petitioner was returned to Omaha, Nebraska after failing to comply. Failure to comply cases are returned to the docket control offices for further actions, this also makes more beds available for other removal cases.

25.    On October 19, 2025, [Calderon-Batista's] Motion to Reopen was denied by IJ. Stay of Removal expired once the decision was made on the Motion to Reopen.

26.    On December 27, 2025, Notice of Failure to Comply Letter was served via certified mail to Petitioner at McCook Detention Center.

27.    Petitioner is and will remain in ICE custody pending his removal. ICE will make arrangements for his removal once he is willing to corporate with his removal to Mexico. Currently Mexico is willing to accept Petitioner.

Filing 12 at 5 (¶¶ 23–27).

Calderon-Batista's Petition and briefing were silent on any attempt to remove him to Mexico. This silence was notwithstanding Calderon-Batista's attachment to his Petition of the

December 27, 2025, Notice of Failure to Comply Pursuant to 8 C.F.R. § 241.4(g), which refers to his failure to cooperate with removal to either Cuba or Mexico. Filing 1-1 at 5–6; *see also* Filing 1 at 7 (¶ 30) ("On December 27, 2025, ICE served Petitioner with further documents regarding his detention."). Consequently, at the hearing, the Court asked Calderon-Batista's counsel why the Petition on Calderon-Batista's behalf failed to mention the notice of removal to Mexico or Calderon-Batista's refusal to board the bus to effectuate his removal to Mexico.[4] His response was that nothing formal had been given to Calderon-Batista or his counsel that Mexico is willing to accept Calderon-Batista. He added that in his view taking an alien into Mexico without any documents that he is allowed to go into Mexico was not sufficient to make Calderon-Batista's refusal to go to Mexico failure to comply with removal. He argued that there was no document in the record directly from Mexico showing that it was willing to accept him.

In response, Federal Respondents pointed to the September 2, 2025, notice of third country removal to Mexico. Filing 12 at 4 (¶ 21); Filing 12-7. Federal Respondents assert that there is uncontroverted evidence that Calderon-Batista has an effective pathway for removal to Mexico, but he has refused to follow it, which permits his continued detention for failure to comply with removal under 8 C.F.R. § 241.4(g). Federal Respondents also assert that there is no evidence that Calderon-Batista's removal to Mexico would be unlawful.

The Court concluded on the record that Calderon-Batista clearly refused to be removed to Mexico. When specifically and directly being questioned about whether Calderon-Batista indeed refuses to be deported to Mexico, counsel for Calderon-Batista did not dispute that Calderon-

---

[4] The Court has made use of an unedited draft of the transcript from the hearing. Thus, the Court does not provide pinpoint citations to statements drawn from that transcript.

Batista had refused to be deported to Mexico. He agreed further that at the time of the hearing, Calderon-Batista would not consent to being deported to Mexico.

### C. Procedural Background

#### 1. Calderon-Batista's Petition

Calderon-Batista filed his Petition in this matter on January 30, 2026. Filing 1. He asserts three claims for habeas relief. In Count 1 of his Petition, Calderon-Batista alleges violation of the Immigration and Naturalization Act (INA). Filing 1 at 12. This claim is based on the following allegation:

> 48.    The Petitioner's continued detention by Respondents is unlawful and contravenes 8 U.S.C. § 1231(a)(6) as interpreted by the U.S. Supreme Court in *Zadvydas [v. Davis*, 533 U.S. 678 (2001)]. The six-month presumptively reasonable period for continued removal efforts has expired. Petitioner still has not been removed, and for the reasons outlined above, Petitioner's removal to Cuba is not reasonably foreseeable. The Supreme Court held in *Zadvydas* that ICE's continued detention of someone after six months where deportation is not reasonably foreseeable is unreasonably and in violation of 8 U.S.C. §1231(a). 533 U.S. at 701.

Filing 1 at 12–13.

In Count 2, Calderon-Batista alleges a violation of substantive due process. Filing 1 at 13. The gravamen of this claim is the following:

> 49.    Petitioner's continued detention violates Petitioner's right to substantive due process through a deprivation of the core liberty interest in freedom from bodily restraint. *See e.g., Tam v. INS*, 14 F.Supp.2d 1184 (E.D. Cal 1998) (aliens retain substantive due process rights).

> * * *

> 51.    In total, ICE has had over 14-months to effectuate Petitioner's removal. Since being re-detained on June 27, 2025, Petitioner has been detained for 217 days, i.e., 7-months. There is no significant likelihood of his removal in the reasonably foreseeable future. Nor have any other facts or circumstances changed for Petitioner that would change Respondents' assessment of his risk of flight or his danger to the community.

Filing 1 at 13–14 (¶¶ 49, 51).

In Count 3, he asserts violation of procedural due process. Filing 1 at 14. The gravamen of this claim is the following:

> 52.     Under the Due Process Clause of the Fifth Amendment, a noncitizen is entitled to a timely and meaningful opportunity to demonstrate that s/he should not be detained. Petitioner in this case has been denied that opportunity. ICE does not make decisions concerning aliens' custody status in a neutral and impartial manner. The failure of Respondents to provide a neutral decision-maker to review the continued custody of Petitioner violates Petitioner's right to procedural due process. There is no administrative mechanism in place for the Petitioner to demand a decision, ensure that a decision will ever be made, or appeal a custody decision that violates *Zadvydas*.

Filing 1 at 14–15 (¶ 52).

As to relief, Calderon-Batista requests that this Court:

a)  Accept jurisdiction of the matter;

b) Order that Petitioner shall not be transferred outside this court's jurisdiction while this habeas petition is pending;

c)  Issue an Order to Show Cause ordering Respondents to show cause why this Petition should not be granted within three days;

d)  Issue a Writ of Habeas Corpus requiring that Respondents release Petitioner or, in the alternative, provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) within seven days;

e)  Declare that Petitioner's detention is unlawful; and

f)  Grant any other and further relief that this Court deems just and proper.

Filing 1 at 16 (Request for Relief).

*2.  Prehearing Matters*

The case was assigned to the undersigned on February 2, 2026. Filing 2. On February 3, 2026, the Court entered an Order to Show Cause, which among other things set a deadline for Respondents to make a return and a deadline for Calderon-Batista to file a reply. Filing 5 at 5. The Court also stated that it would promptly set a hearing on this matter upon the filing of Calderon-Batista's proof of service of the Petition and the Show Cause Order. Filing 5 at 5. On February 9,

2026, Calderon-Batista filed an Affidavit of Service of his Petition and the Order to Show Cause on all Respondents, Filing 8, with Proof of Service by UPS with tracking. Filing 8-1. On February 10, 2026, the Court entered an Order Setting Hearing on Petition for Writ of Habeas Corpus on February 20, 2026. Filing 9 at 2.

On February 6, 2026, before Calderon-Batista had filed any proof of service, counsel for the State Respondent, the Warden of the McCook Detention Center, had already appeared, Filing 6, and filed the State Respondent's Return, Filing 7. The State Respondent took no position on the substantive issues raised in the Petition or on whether a writ should or should not be granted because the State Respondent understood that she was a party only because she is the physical custodian of Petitioner. Filing 7 at 1–2. More specifically, the State Respondent stated,

> From reading the Petition for Writ of Habeas Corpus ("Petition") (Doc. No. 1), it is Warden's understanding that she is only made a party to this action pursuant to 28 U.S.C. §2242 because Dairan Calderon-Batista ("Petitioner") is currently detained at the McCook Detention Center in McCook, Nebraska, which is the subject of an Inter-Governmental Service Agreement ("IGSA") between Nebraska Department of Correctional Services ("NDCS"), U.S. Department of Homeland Security ("DHS") and the U.S. Immigration and Customs Enforcement ("ICE"). (Doc. No. 1, ¶20).

Filing 7 at 1–2. After the Court entered its Order Setting Hearing, Federal Respondents filed their Return disputing Calderon-Batista's claims for habeas relief, an Index, and the Declaration of DO Hernandez with various attachments. Filing 10; Filing 11; Filing 12. As mentioned at the outset of this decision, Federal Respondents' position is that Calderon-Batista is and will remain in custody because attempts to remove him to Cuba have been unsuccessful and because he is now in "failure-to-comply" status after refusing to get on a bus at outtake in El Paso after he was notified of removal to Mexico as a suitable third country that is willing to accept him. Filing 12 at 4.

On February 12, 2026, Calderon-Batista filed an Unopposed Motion to Permit Petitioner's Counsel to Appear via Video Conference for February 20, 2026, [Hearing]. Filing 13. That request

was granted. Filing 15. On February 12, 2026, Calderon-Batista also filed a Motion for Witness to present the testimony of DO Hernandez at the hearing. Filing 14. The Court entered an Order for Respondents to file a response to Calderon-Batista's Motion. Filing 16. Federal Respondents filed what they styled as an Objection to Petitioner's Motion for Witness, Filing 17, and Calderon-Batista filed a Reply to Respondents' Objection, Filing 18.

On February 19, 2026, the Court entered an Order denying Calderon-Batista's Motion for Witness. Filing 19. The Court concluded that a petitioner is able to deny under oath any facts set forth in the return, but the applicable statute does not state that the denial must be by live testimony rather than by affidavit. Filing 19 at 3 (citing 28 U.S.C. § 2243). The Court noted that dismissal of a habeas petition without a hearing is proper where a dispute can be resolved on the basis of the record. Filing 19 at 3. The Court explained,

> Here, Petitioner has only belatedly disputed the facts stated by the Federal Respondents' declarant. Although Petitioner claims to have learned of the declarant's existence and involvement in his case on February 10, 2026, that was before the deadline set by the Court for Petitioner to file any Reply to Respondents' Returns, but Petitioner filed no such Reply. When Petitioner filed his Motion for Witness he offered no clarification of what facts he would seek to prove by calling the declarant as a witness at his habeas hearing. Without any timely dispute of fact, and a record that already contains the documents in support of the declarant's statements that are the basis for Petitioner's belated arguments about the declarant's statements, the Court concludes that the record contains all the facts necessary to resolve Petitioner's claim without any further evidentiary development.

Filing 19 at 4 (citations omitted). The Court also reasoned that 28 U.S.C. § 2248 states that a petitioner's failure to file a timely traverse to a respondent's allegations means that a court is required to accept a respondent's allegations as true. Filing 19 at 4–5. The Court also concludes that the proposed testimony would make no difference in the legal conclusions this Court makes in denying the petition given the petitioner's admitted refusal to cooperate in his deportation to the suitable third country Mexico.

### 3.  *The Hearing*

The Court held the hearing as scheduled. Filing 20 (hearing minutes). Counsel for Calderon-Batista had requested and received permission to appear remotely for this hearing, but in anticipation of inclement weather, which did occur the day and night before the hearing, the Court set up the hearing by Zoom for all participants. The parties' presentations were brief but informative.

## II.  LEGAL ANALYSIS

### A.  The Availability of Habeas Corpus Relief

Article I, § IX of the United States Constitution states, "The privilege of the Writ of Habeas Corpus shall not be suspended, unless when in cases of Rebellion or Invasion the public Safety may require it." "In enacting the present Title 28 of the United States Code [in 1948], Congress largely recodified the federal courts' pre-existing habeas authority in §§ 2241 and 2243, which, respectively, confer the power to grant the writ and direct the issuing court to 'dispose of the matter as law and justice require.'" *Jones v. Hendrix*, 599 U.S. 465, 473 (2023) (citing 62 Stat. 869, 964–65). As the Court observed above in § I.A., 28 U.S.C. § 2241 extends the writ of habeas corpus *inter alia* to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Supreme Court has recognized that § 2241(c)(3) confers on the District Court jurisdiction to hear habeas corpus challenges to the legality of the detention of aliens, such as Petitioner Calderon-Batista. *Rasul*, 542 U.S. at 483–84; *Zadvydas*, 533 U.S. at 687. Federal Respondents do not challenge this Court's subject-matter jurisdiction over Calderon-Batista's Petition for Writ of Habeas Corpus, and the Court is satisfied that it has such jurisdiction. District Courts in this circuit and elsewhere agree that a habeas petitioner under § 2241 bears the burden of demonstrating by a preponderance of the evidence that his or her detention is unlawful.

19

*See Maldonado v. Olson*, No. 25-CV-3142 (SRN/SGE), 2025 WL 2374411, at *4 (D. Minn. Aug. 15, 2025) (collecting cases).

### B. Calderon-Batista Fails to Prove that His Detention Is Unlawful

As mentioned just above, Calderon-Batista bears the burden of demonstrating by a preponderance of the evidence that his continued detention is unlawful. *See Maldonado*, 2025 WL 2374411, at *4 (collecting cases). The Court concludes that Calderon-Batista cannot carry that burden.

### 1. *The Record Shows that Calderon-Batista's Continued Detention Is Because of Failure to Comply with Removal to Mexico not Cuba*

Calderon-Batista's position—as amplified at the hearing—is that it is unfair to continue to detain him when he and Federal Respondents have both attempted to secure travel documents to Cuba, but the Cuban government has ignored those efforts. The Court concludes that Calderon-Batista is mistaken about the basis for his continued detention.

As Federal Respondents argued, and the record evidence shows, the reason for Calderon-Batista's continued detention is his failure to comply with removal to Mexico. The Notice of Failure to Comply Pursuant to 8 C.F.R. § 241.4(g), dated December 27, 2025, expressly states,

> You have failed *to assist ICE in applying for a travel document. You have been ordered removed from the United States by an Immigration Judge to Cuba or an alternative country. When Deportation Officers asked if you would comply with a removal to Mexico, you refused.* You have failed to comply with your obligation and are acting to prevent your removal from the United States. The removal period is therefore extended m your case.

Filing 1-1 at 5 (emphasis in the original); Filing 1 at 7 (¶ 31). There is no evidence in the record that even after being served on September 2, 2025, with a notice of third country removal to Mexico, Filing 12 at 4 (¶ 21); Filing 12-7, Calderon-Batista made any effort to secure travel documents to Mexico. There is also uncontroverted evidence in the record that Calderon-Batista

refused to be removed to Mexico on September 22, 2025. Filing 12 at 4 (¶ 22); Filing 1-1 at 5; *see also* Filing 19 at 4–5 (concluding that failure to file a timely traverse to Federal Respondents' declarant's allegations means that the Court "shall" accept those allegations as true (citing 28 U.S.C. § 2248)). There is also uncontroverted evidence that on October 31, 2025, the Government of Cuba denied acceptance of Calderon-Batista. Filing 12 at 4 (¶ 20). Thus, by the time Calderon-Batista filed his Petition, removal to Cuba was no longer at issue—*i.e.*, there was no longer any significant likelihood of removal in the reasonably foreseeable future (or SLRRF) to Cuba. At that time only removal to Mexico remained a possibility, and the Court concluded on the record that Calderon-Batista clearly refused to be removed to Mexico as stated in § I.B. above.

2. *Failure to Comply with Removal to Mexico Permits Continued Detention*

As the Court stated on the record at the hearing, "Under clear law, under [a] clear statute [Calderon-Batista] can now be detained and he has been detained" based on his failure to comply with removal to Mexico. Specifically, 8 U.S.C. § 1231(a)(1)(C) states,

> The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

8 U.S.C. § 1231(a)(1)(C). Likewise, 8 C.F.R. § 241.4 provides for the detention of aliens beyond the removal period in essentially the same terms as § 1231(a)(1)(C) provides for suspension of the removal period. The part of the regulation pertinent here states,

> Release will be denied and the alien may remain in detention if the alien fails or refuses to make timely application in good faith for travel documents necessary to the alien's departure or conspires or acts to prevent the alien's removal. The detention provisions of section 241(a)(2) of the Act [8 U.S.C. § 1231(a)(2)] will continue to apply, including provisions that mandate detention of certain criminal and terrorist aliens.

8 C.F.R. § 241.4(g)(5)(i). Calderon-Batista's contentions notwithstanding, the Court concludes

that he has "act[ed] to prevent [his] removal." 8 U.S.C. § 1231(a)(1)(C); 8 C.F.R. § 241.4(g)(5)(i).

Under these circumstances, Calderon-Batista was properly detained for failure to comply with

removal to Mexico. *Id*.; 8 C.F.R. § 241.4(g)(5)(i).

> 3.  *The Failure to Comply with Removal to Mexico Defeats any Claim of Unlawful Detention Pending Removal to Cuba*

At the hearing, the Court asked Calderon-Batista's counsel if Calderon-Batista's refusal to

be removed to Mexico mooted his claims for habeas relief completely. His counsel evaded the

question by instead focusing on what he argued was the lack of essential evidence in the form of

a document from Mexico indicating Mexico's willingness to accept Calderon-Batista. He argued

that in the absence of such evidence, Calderon-Batista's refusal to get on the bus to Mexico should

not be considered refusal to comply with removal. Federal Respondents' answer to the same

question was more responsive. Federal Respondents took the position that cases they cited showed

that habeas relief is inappropriate when the government is willing and able to release an alien to a

third country such that the alien "essentially has the keys in his own pocket and he can end his

detention immediately." Although Federal Respondents' counsel opined that Calderon-Batista's

claims were "probably" moot, it is clear that Calderon-Batista is not being unlawfully detained

when he has the keys to his release in his pocket, and ICE is ready to remove him to Mexico.

Federal Respondents are correct that the Eighth Circuit Court of Appeals and other Circuit

Courts of Appeals have recognized that habeas relief is inappropriate where an alien can control

his release from detention. *See Banyee v. Garland*, 115 F.4th 928, 933 (8th Cir. 2024) (quoting

*Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999), as stating that an alien "has the keys in his

pocket" and can "end[ ] his detention immediately" by taking certain action to comply with

removal); *Lema v. I.N.S.*, 341 F.3d 853, 856 (9th Cir. 2003) ("We explained that the risk of

indefinite detention that motivated the Supreme Court's statutory interpretation in *Zadvydas* does not exist when the alien "has the keys [to freedom] in his pocket and could likely effectuate his removal by providing the information requested by the INS." (quoting *Pelich v. INS*, 329 F.3d 1057, 1060 (9th Cir. 2003)). Here, Calderon-Batista was expressly notified in the December 27, 2025, Notice of Failure to Comply Pursuant to 8 C.F.R. § 241.4(g) that he had the keys to his release from detention in his pocket. The Notice stated, "[Y]ou are to remain in ICE custody until you demonstrate that you are making reasonable efforts to comply with the order of removal, and that you are cooperating with ICE's efforts to remove you." Filing 1-1 at 5.

Thus, regardless of whether Calderon-Batista's claims of unlawful detention based on failure to comply with removal to Cuba are moot, it is clear that habeas relief from allegedly unlawful detention would be inappropriate where Calderon-Batista has the keys to his release in his pocket by agreeing to comply with removal to Mexico.

### 4. Failure to Comply with Removal to Mexico Fatally Undermines Calderon-Batista's Due Process Claims

Calderon-Batista's claims for habeas relief based on alleged detention in violation of substantive and procedural due process fare no better than his claim based on alleged violation of § 1231. As mentioned above in § I.A., some courts have taken the position that "[a]n alien's failure to cooperate diminishes any constitutional claim he might have" concerning allegedly unlawful detention. *See Thok v. Berg*, No. 8:20CV478, 2021 WL 1877646, at *2 (D. Neb. Apr. 1, 2021) (citing *Pelich v. I.N.S.*, 329 F.3d 1057, 1061 (9th Cir. 2003); *Gael A. O. v. DHS/ICE Office of Chief Counsel*, No. 18-CV-3269 (WMW/TNL), 2019 WL 3325839 at * 4 (D. Minn. May 13, 2019); and *In Akinsehinwa v. Donate*, No. 1:CV-08-00395, 2008 WL 2951072, *4 (M.D. Pa. 2008)). In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court concluded that indefinite detention of aliens "would raise serious constitutional concerns." 533 U.S. at 682. Consequently,

the Supreme Court construed 8 U.S.C. § 1231(a)(6) to limit an alien's post-removal detention to "a period reasonably necessary to bring about that alien's removal." *Id.* at 689. As the Ninth Circuit subsequently explained, "[T]he risk of indefinite detention [which raises constitutional concerns] that motivated the Supreme Court's statutory interpretation in *Zadvydas* does not exist when the alien 'has the keys [to freedom] in his pocket and could likely effectuate his removal by providing the information requested by the INS.'" *Lema v. I.N.S.*, 341 F.3d 853, 856 (9th Cir. 2003) (quoting *Pelich v. INS*, 329 F.3d 1057, 1060 (9th Cir. 2003)). Thus, Calderon-Batista's ability to control his own release from detention—in this case by complying with removal to Mexico—precludes any relief on his due process claims.

### III. CONCLUSION

Upon the foregoing,

IT IS ORDERED that Calderon-Batista's Petition for Writ of Habeas Corpus, Filing 1, is denied.

Dated this 2nd day of March, 2026.

BY THE COURT:

_____

Brian C. Buescher
United States District Judge